UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

SOUTH FORK LIVESTOCK PARTNERSHIP,

    Plaintiff,

v.

UNITED STATES OF AMERICA; *et al.*,

    Defendants.

3:15-CV-00066-LRH-VPC

ORDER

    Before the court is defendants United States of America, United States Department of the Interior, Bureau of Land Management ("BLM"), Bureau of Indian Affairs ("BIA") (collectively the "United States Defendants"), Brad Sones, Joseph McDade, Rich Adams, Dave Smith, Amy Leuders, and Bryan L. Bowke's (collectively the "Federal Employees")[1] Motion to Dismiss. Doc. #35.[2] Plaintiff South Fork Livestock Partnership ("SFLP") filed a response to the Motion to Dismiss (Doc. #42), to which Defendants replied (Doc. #44).

    Also before the court is defendant Alice Tybo's Motion to Dismiss (Doc. #41), and defendants Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds' Motion to Dismiss (Doc. #57). Alice Tybo, Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds will collectively be referred to as the "Tribal Defendants." SFLP filed a response to Alice Tybo's

---

[1] The United States Defendants and the Federal Employees are referred to either individually or collectively as the "Federal Defendants."

[2] Refers to the court's docket numbers.

1

Motion to Dismiss (Doc. #43), to which she replied (Doc. #47). SFLP also filed a response to Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds' Motion to Dismiss (Doc. # 60), to which they replied (Doc. # 66).

**I.    FACTUAL BACKGROUND**

This action involves a dispute over the use of grazing permits on federal land. Plaintiff SFLP is a partnership made up of several tribal members of the Te-Moak Tribe of Western Shoshone Indians of Nevada (the "Te-Moak Tribe") who were granted grazing permits by the United States Bureau of Land Management to graze cattle on various public lands located in Elko County, Nevada, known as the Shoshone allotment. The Te-Moak Tribe is comprised of four Bands: the Battle Mountain Band, the Elko Band, the Wells Band, and the South Fork Band. The Te-Moak Tribal Council exercises overall jurisdiction over its Bands and all tribal lands, but individual bands control grazing permits on their respective lands. Tribal Defendants Alice Tybo, Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds are voting members of both the Te-Moak Tribal Council and the South Fork Band Council.

The Shoshone allotment is comprised of federal land managed by the BLM and tribal lands - held in trust by the United States for the Te-Moak Tribe - managed jointly by the Bureau of Indian Affairs and the South Fork Band Council of the Te-Moak Tribe. Through this system of separate land and management, the BLM has no authority to manage the tribal lands, and the BIA and the South Fork Band have no authority to manage the BLM land. The BLM manages the public land in accordance with their internal processes, and the South Fork Band Council manages the tribal land through a majority vote of council members. No individual South Fork Band Council member has the ability to bind the tribe or take individual action concerning the tribal land.

Management of the Shoshone allotment by both the BLM and the South Fork Bank Council includes the issuance of grazing permits. Grazing permits issued by the BLM allow the holder to graze a specific number of cattle on only BLM managed land. In contrast, grazing

permits issued separately by the South Fork Band Council only authorize grazing on tribally managed lands within the Shoshone allotment. Although the tribal and federal lands are separate and distinct with respect to use and management, they are adjacent to each other and run in a checkerboard pattern, which inevitably causes some confusion over access, boundary lines, and resources. Here, SFLP's grazing permits were issued solely by the BLM, and thus, only authorize grazing on the identified BLM managed land within the Shoshone allotment. SFLP alleges that the Tribal Defendants and the Federal Defendants have prevented it from exercising its rights under the federal grazing permits by restricting access to the land and water resources designated in the grazing permits.

On January 30, 2015, SFLP filed its initial complaint against multiple defendants. Doc. #1. On July 13, 2015, this court dismissed certain tribal defendants for jurisdictional reasons with prejudice, and dismissed other tribal defendants for pleading deficiencies, without prejudice. Doc. #27. That order also granted SFLP leave to file an amended complaint. *Id*. On September 12, 2015, SFLP filed an amended complaint alleging six causes of action: (1) breach of contract, alleged only against Federal Defendants; (2) intentional interference with the SFLP contract, alleged against all defendants; (3) intentional interference with access to water, alleged only against Tribal Defendants; (4) procedural due process, alleged only against Federal Defendants; (5) substantive due process, alleged only against Federal Defendants; and (6) conspiracy, alleged against all defendants. Doc #32. In response, defendants filed the present Motions to Dismiss (Doc. ##35, 41, 57).

**II.     LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that

offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's "judicial experience and common sense," that the defendant is liable for the misconduct alleged. *See id.* at 678-79. The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* The "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

///

///

4

III. **DISCUSSION**

    1. <u>**Tribal Defendants' Motions to Dismiss (Doc. ## 41, 57)**</u>

In its complaint, SFLP alleges that the Tribal Defendants have prevented it from exercising its rights under the BLM issued grazing permits by preventing access to certain grazing lands and depriving it of water historically allocated to BLM land within the Shoshone allotment. However, throughout the amended complaint there are no specific, individual allegations against any Tribal Defendant that allege specific harm to SFLP. Rather, SFLP pleads that the collective action of the South Fork Band Council, consisting of the Tribal Defendants, deprived it of, or interfered with, its use of lawfully obtained BLM grazing permits. In their motions to dismiss, the Tribal Defendants argue that all allegations plead against them in the amended complaint are based upon actions taken in their official capacities as voting members of the South Fork Band Council and are therefore barred by sovereign immunity. *See* Doc. ##41, 57. The court agrees.

This court previously found that the Te-Moak Tribe has not waived its sovereign immunity to suit when it dismissed the tribe with prejudice. *See* Doc. #27, p.3 ("there has been no express waiver of sovereign immunity by either defendant Te-Moak Tribe or defendant South Fork for the present action."). A tribe's sovereign immunity extends to tribal officials so long as they are acting in their official capacity. *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015). "The general bar against official-capacity claims . . . . [is] that tribal officials are immunized from suits brought against them *because of* their official capacities. That is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." *Id.* (emphasis in original) (quoting *Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008)).

Here, the court has reviewed the documents and pleadings on file and finds that at all times pertinent to this action the Tribal Defendants were acting in their official capacity as Tribal and Band Council members, and are thus entitled to sovereign immunity. In its amended

complaint, SFLP does not make any allegations against the Tribal Defendants that would preclude extending sovereign immunity to their alleged conduct. The principal harms alleged by SFLP include: the erection of fences that restrict SFLP access to tribal land, removing water pumping equipment from tribal lands that deprives SFLP's cattle of water, and voting on tribal or band matters in a way that specifically disadvantages SFLP. Each of the aforementioned harms are caused directly and solely by a vote of the South Fork Band Council. When the sole basis for relief against a tribal defendant stems from that tribal defendant's vote at a tribal or band council meeting, the Ninth Circuit has historically extended sovereign immunity to that defendant. *See id.*; *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 478 (9th Cir. 1985) (holding that high-ranking tribal council members are entitled to sovereign immunity when sued individually for voting on tribal matters); *Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008) (holding that tribal leaders were entitled to sovereign immunity when accused of violations in their individual capacity stemming from tribal votes affecting the commercial activity of the tribe); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991) (finding that when the only individual action taken is a vote by tribal officials, any suit is actually against the tribe, and not against the individuals). The court sees no reason to depart from this established precedent in this action. Nowhere in the complaint does SFLP allege individual action by a Tribal Defendant, such as a Tribal Defendant actually erecting a fence that prevented SFLP from grazing certain land or personally removing water pumping equipment from tribal land. Rather, the pleadings make clear that Tribal Defendants simply exercised their powers as voting members of the South Fork Band Council. Therefore, the court finds that Tribal Defendants are entitled to sovereign immunity in this action and shall dismiss them accordingly.

Additionally, the relief sought by SFLP in its amended complaint, namely monetary and injunctive relief, supports the court's finding that Tribal Defendants were engaged in their official capacities and are thus entitled to sovereign immunity in this action. "The general rule is

6

that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992) (citations and internal quotation marks omitted); *see also, Land v. Dollar*, 330 U.S. 731, 738 (1947), *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949) (holding that a suit is against individuals in their official capacity if the relief sought would be paid for or accomplished by the sovereign entity). Here, SFLP seeks monetary relief and injunctive relief in the form of permanent injunctions against the Tribal Defendants. Because SFLP makes no mention of individual action by the Tribal Defendants, the court can only conclude that SFLP is requesting compensatory damages from the Tribe itself for the defendants' conduct, rendering this suit a suit against the sovereign. Further, the requested injunctive relief is requested not only against the Tribal Defendants, who are current South Fork Band Council members, but also against their successors. The nature of the requested injunctive relief makes clear that this relief is not requested against any one individual for that individual's actions, but, rather, against the council itself for its management decisions that have allegedly harmed SFLP. Even if temporally limited to the current South Fork Band Council members, the grant of the injunctive relief requested would surely restrain the South Fork Band Council from acting, or compel it to act—again, rendering this suit against the Tribal Defendants a suit against the sovereign itself. Moreover, the simple fact that the injunctive relief sought by SFLP could not be provided by the Tribal Defendants alone, but would necessitate this court to enjoin their successors as well as additional members of the South Fork Band Council who are not parties to this action, is additional indicia that this suit is against the Tribal Defendants in their official capacities as members of the South Fork Band Council. Accordingly, the court shall dismiss the Tribal Defendants with prejudice.

///

///

**2.   Federal Defendants' Motion to Dismiss (Doc. # 35)**

a. Breach of Contract

SFLP's first cause of action alleges that the Federal Defendants breached a contract with SFLP by frustrating its use of lawfully obtained grazing permits. Doc. #32. In their Motion to Dismiss, Federal Defendants contend that because the damages sought by SFLP on this cause of action are in excess of $10,000, this court does not have jurisdiction over this claim. Doc. #35.

Generally, exclusive jurisdiction over claims against the United States for monetary damages is conferred to the U.S. Court of Federal Claims. TUCKER ACT, 28 U.S.C. § 1346 (2012). One narrow exception to this grant of exclusive jurisdiction is for claims against the United States that do not exceed $10,000. LITTLE TUCKER ACT, 28 U.S.C. § 1346 (2012). In such a case, a district court is granted concurrent jurisdiction over the claim with the U.S. Court of Federal Claims. To fall under this narrow exception, a party may waive their right to recover more than $10,000 in order to satisfy the jurisdictional requirements of the Little Tucker Act, thereby preserving a district court's concurrent jurisdiction. *U.S. v. Park Place Associates, Ltd.*, 563 F.3d 907, 927 (9th Cir. 2009). Further, a waiver of damages in excess of $10,000 need not be initially plead in the complaint, but can be made later, even if greater damages are alleged in the complaint. *DiLuigi v. Kafkalas*, 437 F. Supp. 863, 870 (M.D. Pa. 1977), *judgment vacated on other grounds*, 584 F.2d 22 (3d Cir. 1978).

Here, in its opposition to the motion to dismiss, SFLP specifically waives its right to receive a sum greater than $10,000 on its breach of contract cause of action. Doc. #42, p. 8. Because SFLP waived its right to receive a sum greater than $10,000, this court has concurrent jurisdiction over this cause of action pursuant to The Little Tucker Act. *See* 28 U.S.C. § 1346.

As the court has determined that it has concurrent jurisdiction over SFLP's breach of contract cause of action, the court must now evaluate the merits of SFLP's breach of contract claim. Under Nevada state law, the plaintiff in a breach of contract action must allege (1) the

///

existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006).

Here, the grazing permits in this action do not constitute valid contracts for the purposes of state law, but rather are licenses conferring certain privileges, revocable at the government's discretion. *See Hage v. United States*, 35 Fed. Cl. 147, 167 (1996) ("All [of] the [federal] courts which have considered this issue have held or assumed such agreements to be licenses which confer certain privileges to the permittee, revokable [sic] at the government's discretion."); *Fulton v. United States*, 825 F. Supp. 261, 263 (D. Nev. 1993) ("a grazing permit is a fully revocable, nontransferable privilege. Any reliance on contract law by plaintiff is misplaced and irrelevant."); *Colvin Cattle Co. v. United States*, 67 Fed. Cl. 568 (2005) *aff'd,* 468 F.3d 803 (Fed. Cir. 2006) ("lease to graze cattle issued under the Taylor Grazing Act does not constitute a contract binding the United States."); *United States v. Estate of Hage*, 810 F.3d 712, 717 (9th Cir. 2016) (quoting *Swim v. Bergland,* 696 F.2d 712, 719 (9th Cir. 1983); *accord West,* 232 F.2d at 697–98; *Osborne v. United States,* 145 F.2d 892, 896 (9th Cir. 1944)) ("a grazing permit 'has always been a revocable privilege' and is not a 'property right[ ].'"). Because the grazing permits in question are revocable licenses and not contracts, SFLP cannot maintain a breach of contract action against any of the Federal Defendants as a matter of law. Therefore, the court shall grant the Federal Defendants' Motion to Dismiss as to this cause of action.

b. Intentional Interference with the SFLP Contract[3]

SFLP's second cause of action for intentional interference alleges the Federal Defendants conspired to interfere with SFLP's grazing permits by persuading Tribal Defendants to erect fences that prevented SFLP from accessing the areas identified in the permits and allowing overgrazing by non-parties in the designated areas. Doc. #32. The Federal Employees argue that Federal Tort Claims Act ("FTCA") is the exclusive remedy for those alleging a tort against the

---

[3] This count was initially alleged against all Federal Defendants, but SFLP has since withdrawn the claim against the United States Defendants, thereby leaving only the Federal Employees as defendants.

9

United States or its employees, and therefore, this claim shall be dismissed. Doc. #35. The court agrees.

The FTCA is the exclusive remedy for monetary damages for injuries "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (2012). Before filing an action against the federal government under the FTCA, a plaintiff must file an administrative claim to the appropriate federal agency within two years after the alleged wrongful action occurred. 28 U.S.C. § 2675 (2012). The administrative claim must specify the amount of compensation requested, and a plaintiff may not later seek an amount in excess of the administrative claim. *Id.* If the agency does not dispose of the administrative claim within six months, the claimant may consider the lack of decision to be a final denial, and proceed with the filing of a civil action. *Id.* If the agency denies the administrative claim, suit must be filed within six months of the date of mailing of such denial. *Id.*

Here, SFLP did not file an administrative claim with either the BLM or BIA before filing this suit. As such, SFLP did not comply with the mandatory administrative exhaustion requirements of the FTCA and is barred from bringing this action as a matter of law. *See* 28 U.S.C. § 2675 (2012).

Additionally, even if SFLP had complied with the administrative requirements of the FTCA, because the grazing permits issued to SFLP are licenses and not contracts, a tortious interference claim would still be defective for want of a valid contract. In Nevada, to sufficiently allege an intentional interference with contractual relations, a plaintiff must allege: (1) a valid and existing contract, (2) the defendant's knowledge of the contract, (3) intentional acts intended or designed to disrupt the contractual relationship, (4) actual disruption of the contract, and (5) resulting damage. *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264 (2003). For the same reason

SFLP's breach of contract claim fails above, SFLP's intentional interference claim fails—the grazing permits obtained by SFLP do not constitute a contract. Therefore, the court shall grant the Federal Defendants' Motion to Dismiss as to this cause of action.

### c. Procedural and Substantive Due Process

SFLP's fourth and fifth causes of action allege procedural and substantive due process violations against the Federal Defendants. Specifically, SFLP alleges that Federal Defendants allowed members of non-party Te-Moak Livestock Association to displace SFLP's cattle and allowed other cattle to graze on land permitted to SFLP without permits, thereby depriving SFLP of the full value of its grazing permits. SFLP's claims rely solely on a vacated and reversed decision from this district, *United States v. Estate of Hage*, for establishing a protected property interest for the purposes of procedural and substantive due process. 2013 WL 2295696, (D. Nev. May 24, 2013), *vacated in part,* 810 F.3d 712 (9th Cir. 2016), and *rev'd in part,* 2016 WL 209847 (9th Cir. Jan. 15, 2016).

In their motion to dismiss, the Federal Defendants argue that SFLP did not possess a protected property interest in their grazing permits and that any alleged deprivation in this action is unrelated to a fundamental interest protected by substantive due process. The court agrees.

For the purposes of procedural due process, the property interest is derived from state law, as opposed to the Constitution. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)). Whereas, substantive due process rights are created only by the Constitution, and are limited to rights that have been determined to be fundamental. *Id.*

To successfully allege a procedural due process violation, SFLP must allege: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Wilson v. Holder*, 7 F. Supp. 3d 1104, 1123 (D. Nev. 2014) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir. 1998). Whereas, to successfully allege a substantive due process violation, SFLP must allege a

11

deprivation of a fundamental constitutional right. "The concept of substantive due process, semantically awkward as it may be, forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (citations and internal quotation marks omitted). However, "the Ninth Circuit explained that recent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties 'deeply rooted in this Nation's history and tradition.'" *Gypsum Res., LLC v. Masto*, 672 F. Supp. 2d 1127, 1144 (D. Nev. 2009) (citing *Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996)). "'Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment.'" *McCarty v. Roos*, 998 F. Supp. 2d 950, 954 (D. Nev. 2014) (quoting *Juvenile Male*, 670 F.3d at 1012).

Here, the Ninth Circuit has repeatedly held that the regular renewal of grazing permits does not create a compensable property interest for due process purposes, and that grazing permits are a privilege, not a right. *See United States v. Estate of Hage* 810 F.3d 712, 717 (9th Cir. 2016) (quoting *Swim v. Bergland,* 696 F.2d 712, 719 (9th Cir. 1983) ("a grazing permit 'has always been a revocable privilege' and is not a 'property right. . .'")); *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 2008 WL 4610272, at *28 (D. Or. Oct. 16, 2008) *aff'd,* 602 F.3d 1125 (9th Cir. 2010) ("The Ninth Circuit has clearly held that the regular renewal of grazing permits does not create a compensable property interest, and that grazing permits are a privilege, not a right."); *Bischel v. United States*, 415 F. Supp. 2d 1211, 1212 (D. Nev. 2006) ("The governing regulations are clear that grazing and livestock use permits convey no title, right, or interest to the permit holder.); *Stevens Cty. v. U.S. Dep't of Interior*, 507 F. Supp. 2d 1127, 1136 (E.D. Wash. 2007) ("Ninth Circuit case law compels this Court to find that no property interest in livestock grazing permits exist.").

Because a grazing permit is a revocable privilege and not a compensable property right, SFLP cannot maintain a procedural due process claim against the Federal Defendants as a matter of law. Similarly, because there is no deprivation of a constitutionally protected fundamental right, SFLP cannot maintain a substantive due process claim against the Federal Defendants as a matter of law. Accordingly, the court shall grant the Federal Defendants' Motion to Dismiss as to the procedural and substantive due process causes of action.

### d. Conspiracy[4]

SFLP's last cause of action alleges civil conspiracy against the Federal Employees. Under Nevada state law, in order to allege a cause of action for civil conspiracy, a plaintiff must establish: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort. *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (citing *GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11, 15 (2001)).

Here, as addressed above, SFLP has failed to allege any underlying torts against the Federal Employees. Accordingly, the court shall grant the Federal Defendants' Motion to Dismiss as to this cause of action.

IT IS THEREFORE ORDERED that Federal Defendants' Motion to Dismiss (Doc. #35) is GRANTED.

IT IS FURTHER ORDERED that defendants United States of America, United States Department of the Interior, Bureau of Land Management, Bureau of Indian Affairs, Brad Sones, Joseph McDade, Rich Adams, Dave Smith, Amy Leuders, and Bryan L. Bowke are DISMISSED from this action with prejudice.

///

---

[4] This count was initially alleged against all Federal Defendants, but SFLP has since withdrawn the claim against the United States Defendants, thereby leaving only the Federal Employees as defendants. This count was also alleged against the Tribal Defendants, but is not applicable on the basis of sovereign immunity.

IT IS FURTHER ORDERED that defendant Alice Tybo's Motion to Dismiss (Doc. #41) is GRANTED with prejudice.

IT IS FURTHER ORDERED that defendants Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds' Motion to Dismiss (Doc. #57) is GRANTED with prejudice.

IT IS FURTHER ORDERED that defendants Alice Tybo, Cheryl Mose-Temoke, Gilbert Temoke, and Brandon Reynolds are DISMISSED from this action with prejudice.

IT IS SO ORDERED.

DATED this 27th day of April, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE